Yair Israel Babayoff
69-09 138th Street Apt# 3D
Flushing NY. 11367-1603
Cell 917-577-4623 Fax 212-937-3588
E-Mail Yad14llc@msn.com

Thursday, 05/28/2009

Honorable Judge Elizabeth S. Stong
271 Cadman Plaza East Room 3585
Brooklyn NY. 11201-1800
By Fax

Re: Chapter 11 Case 09-40780 Proposed Plan

To the Honorable Judge Elisabeth S. Stong Greetings

## BACKROUND

Under Chapter 11 I'm aware that a Debtor has 180 days exclusive rights to file a reorganization plan in duly acceptable format. Due to the ongoing pressure I and my immediate family have endured from the unsecured creditor, Mr. Fachlaev, I am formulating this letter as a prelude to a plan.

This case involves the subject property located at 1416 Putnam Avenue Brooklyn, N.Y. 11237 which currently has two creditors, one being Solomon Fachalev, whom is the unsecured lender. The other, a secured creditor, HPD and the City of New York. The subject premise was purchased on September of 2005 with the funds provided by Mr. Fachlaev and others.[1] There were no cosigners or guarantors of the sum of $400,000.00 borrowed from Mr. Fachleav. Debtor has repaid $15,000 to Mr. Fachleav as of this date.

On or about may 2005, The New York State Housing Court Placed the subject

---
[1] SEE SCHEDULE OF INVESTORS MARKED EXHIBIT (A)

1

property in its 7A Program.[2] which appointed an administrator upon application of HPD to administer the building and to do repairs[3] to the property in absence of an owner or acting owner. This was not known to me at the time of purchase to which my attorney never advised me of such. At the time of the appointment of the 7A program three apartments were occupied and three were vacant.

After the Debtor realized that he had no control of the premise and was limited with funds the Debtor with his Father went to New York State Housing Court and requested through numerous Pleadings (a total of 37 appearances) throughout a two year campaign to have the 7A administrator, Peter Nakos's, powers limited & allow the Debtor to conduct repairs & perform the renovations that were necessary according to HPD standards and Department of Building Standards at a much lower price (Some motions which were filed with legal competent representation) The Housing Court sided with HPD and allowed the work to continue. Even when we had a licensed engineer and architect examine and review the building, HPD did the work on its own with it representation that it was to use licensed contractors. The original allocation of HPD was for a rehabilitation budget of $238,000.00 with a 10% escalation clause. The final cost of the rehabilitation exceeded $400,000.00.

The quality of the work and material was another issue. H.P.D. standards require the use of approved HPD vendors paying union wages and hiring legal employees. As per a Daily News investigation it was alleged that the contractors did not hire legal workers nor did it pay legal union wages nor did it use approved materials for the scope of the project.

As for the Unsecured Creditor, Solomon Fachalev, in April of 2007 we resolved with the aid of a Rabbi in a non-Rabbinical Arbitration resolution to secure a mortgage on the premise, pay

---

[2] SEE COPY OF ORDER APPOINTING 7A
[3] SEE JOB INTAKE COMPLETED BY HPD IN NOVEMBER 2004.

2

HPD its liens and the remainder of the mortgage proceeds to be distributed to Mr. Fachleav as a down payment of his outstanding unsecured note. I proceeded in filing for and securing a mortgage from Sovereign Bank for $569,000.00. This would have given Mr. Fachlaev between $100,000.00-$125,000.00. Prior to the closing Mr. Fachlaev filed a Lis-Pendis on the premise rendering the closing impossible which then lead me to my first Chapter 7 Filing. This first filing was in July of 2007.

On Sept. 18, 2007, HPD had unilaterally filed a motion to remove the 7A administrator and give me back my building with the Liens outstanding remaining unpaid.

As my financial conditions post Chapter 7 filing changed I was advised by my attorney to have my Chapter 7 Case dismissed. This was done with the express knowledge of all related parties and without objection of my unsecured creditor. Only objection was noted by an attorney whom claimed to represent Mr. Nakos, asking the court to hand over the building to his client, at that point being an ex administrator. My unsecured creditor at that point initiated a second Rabbinical proceedings against me and now also my father which resulted in a higher

judgment award in his favor. And a judgment against my father for my outstanding loan balance. The Rabbinical decision was that I owe the unsecured creditor the sum of $565,000.00 The court order signed by Judge Gonzalez on September 18, 2007 ordered the administrator to cease all activities as of that date and convey to me any funds he receives from that point on. Further the order stated that the administrator may not pay any obligations from that point in time. Mr. Nakos did not adhere to the court order. Rather he proceeded to file vouchers for payment from HPD and paid to vendors in October of 2007 the total sum of $65,000.00. I proceeded in asking for court intervention. The result of which was that despite the specific order

3

of Judge Gonzalez, Mr. Nakos, now an ex administrator had legal authority to spend the money. An additional judgment for lawyer's fees was later filed against me by Mr. Nakos for the sum of $11,000.00

## PLANS FOR POSSIBILE LITIGATION

My main grievance is primarily with HPD. Which I plan to contest their liens for construction. The following reasons to which I believe according to The Bankruptcy Code will allow me to do Such.

1- HPD under no circumstances wanted me to have this building for reasons that could have been avoided or at least negotiated which caused me to have substantial amount of liens on work that may have been performed within HPD guidelines and using HPD approved vendors for much less.

I even believe that I was discriminated against and denied Fair Housing Laws of not to be able to manage my own building (The 7A Program was not created by the Debtor and the Debtor only came into unknown territories which I believe only did harm to me.)

2- Debtor will contest that HPD's scope of work was subjective and mostly unnecessary for Example: Under the direction of the administrator a work order was issued for the replacement of the boiler in the building. My research, which was composed of merely reading the boiler manufacturer's plate located on the boiler front cover, revealed that the boiler was manufactured in 2004 and had a ten year warranty still in tact. After numerous letters from me, HPD agreed not to replace the boiler.

The administrator then proceeded in submitting a work order for a return valve system at a cost of $9,000.00. The validity of this work is yet to be collaborated by any reputable boiler installer and repair person. .

3- Debtor will contest that even after review with a licensed architect and engineer who testified that a majority of the repairs on the intake of HPD were not necessary and HPD's Technical Unit inspector who was testifying has no Architectural / Engineering degree to rebuttal our engineer's testimony to which the debtor will rehire with approval of the Court to restate his findings.

4- Debtor will contest that HPD did not follow their program guidelines when they placed the the building into the 7A program

5- Debtor will contest that the price that HPD paid to the contractors were high and Debtor could based on either the defective scope or revised scope from Architect's findings the price would be much less

6- Debtor will contest that HPD exceeded the court authorized amount of $255,000.00 and as to why HPD expended liens to up to $465,000.00.

7- Debtor will contest that the quality of work was defective an unbeneficial to me to the extent That:
- the 7A Administrator Reduced the size of the vacant side of the building from a 3 bedroom to a 2 bedroom when on the occupied side he left it as a 3 bedroom apartment.
- material that was used is low quality
- Windows are constantly breaking
- outdoor gate was defective.
- The roof is defective

these are just some of many claims that I will bring if the court will allow me.

8- Debtor will contest that Housing Court stays and orders were violated by the administrator

5

when the building was discharged

9- Debtor will contest that HPD tried to sabotage by establishing false violations and emergency repair on March 26th 2008 on to the premises.

10- Debtor will contest that while HPD made representations in Housing Court that on it contractors the Daily News ultimately revealed that the contractors who were hired by HPD and the 7A were paying non-union labor rates and hiring illegal immigrants with no documents

11- Debtor will contest that the architect Leon St Clair Nation did not file plans according to code and his license is currently suspended from NYC Department of Buildings

## PLAN FOR REPAYMENT

The Debtor was referred by an attorney to Fisher Enterprise, a DIP Financial institution whom are willing to loan me either $300,000.00 or 60% loan to value on the subject property at 12% interest only plus 3 points at closing which I could propose a disbursements by the following:

- All outstanding real estate taxes, water and sewage and emergency repairs which applied to consumables e.g. Gas/oil/electric paid by the City on the premise since Sept 2005.

- Operating funds for the premise of $10,000.00

- Balance of mortgage proceeds to be distributed to the unsecured creditor and a second mortgage signed by me securing the balance due him by the premise.

HPD received the funds from the Federal Government as a grant even though they could make a loan on these funds, if it is established that HPD was wrong / damaged the debtor than I do believe it would be a misuse of federal funds.

HPD could protest to this obviously but what would be the out come?

a) If they sell the liens in an annual lien sale would they be able to recoup dollar for dollar on

what they spent?

b) HPD has given 7A building after they have expended rehabilitation liens to its administrators for regulatory agreements e.g. 1394 Pacific Street 46 Irving Street to which the administrators have been obtaining mortgages from conventional banks and building there own capital on the back of every New York City Tax payer if the city ultimately forecloses on this property they will end up given it to one of these administrators this regulatory agreement which means (that all liens are reduced to zero provided that the rents are kept at a certain guideline.

c) If let Say HPD commences with Option "a" or "b" then at that point Solomon Fachlaev's position will be severely diminished.


**Currently the annual rental income is $79,365.24 that could be increased by filing for an MCI through DHCR with the proper retention of an attorney.**

## REMAINING CREDITORS

1- HSBC is for My Co-op which I will reaffirm
2- Conserve is on a School Bill from Pace University to which I will contest on my own


If this plan is not accepted I respectfully request to transfer the building to the unsecured creditor if he agrees and discharge/dismiss me form this Bankruptcy Proceeding.


Thank You.

_____
YAIR ISRAEL BABAYOFF

7