UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

                                                                Chapter 11
            YAIR ISRAEL BABAYOFF,                               Case No. 09-40780

                                          Debtor.
----------------------------------------------------------------x


**MEMORANDUM DECISION ON MOTION TO CONVERT OR DISMISS**


Appearances:

 Yair Israel Babayoff                        Gregory Messer, Esq.
 144-33 Melbourne Avenue                     Law Offices of Gregory Messer, PLLC
 Flushing, NY 11367                          26 Court Street (Suite 2400)
    *Pro se*                                  Brooklyn, NY 11242
                                                *Attorneys for Solomon Fachlaev*


 Jacqueline A. Frome, Esq.
 Office of the United States Trustee
 271 Cadman Plaza East (Suite 4529)
 Brooklyn, NY 11201
    *Office of the United States Trustee*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

Before the Court is the motion of creditor Solomon Fachlaev to convert or dismiss the

Chapter 11 case of Yair Israel Babayoff.  For the reasons set forth below, the motion is granted

to the extent that this case will be converted to a case under Chapter 7 of the Bankruptcy Code.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and

157(b)(1).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## Background

### *The Debtor and the Debtor's Estate*

This case has been pending since February 3, 2009, when the Debtor, *pro se*, filed a

petition for relief under Chapter 11 of the Bankruptcy Code.[1]  The Debtor has remained in

possession and control of his property throughout the case, pursuant to Bankruptcy Code

Sections 1107 and 1108.  An official committee of unsecured creditors has not been appointed.

The Debtor lists two real properties in the Petition (the "Pet.") and schedules.  The

Debtor indicates that he is the sole owner of a six-family residential property located at 1416

Putnam Avenue in Brooklyn (the "Property").  The Debtor values his interest in the Property at

$400,000, and schedules a secured claim with respect to it of $530,000, held by the Department

of Housing Preservation and Development of the City of New York ("HPD").  The Debtor also

states that he is the co-owner of his primary residence, values that property at $80,000 and

---

[1]  This is not the Debtor's first bankruptcy case.  The Debtor, *pro se*, filed a petition for relief under Chapter 7 on July 19, 2007.  Counsel appeared for the Debtor on November 29, 2007, and that case was dismissed on the Debtor's motion on December 26, 2007.  Orders denying the Debtor's *pro se* requests to reopen that case were entered on April 15, 2008, and January 7, 2009.

indicates that it is encumbered by a mortgage in the amount of $80,000.  And the Debtor schedules $414,089 in unsecured claims, including the claim of Solomon Fachlaev in the amount of $384,900.

It is difficult to ascertain how the Debtor's business has performed over the two years that this case has been pending.  Monthly operating reports, which the Debtor is required to file twenty days after the end of the month, should set forth projected and actual amounts for income, expenses, and cash profit.  But the Debtor has failed to file many of these reports, and has filed others weeks or months late.  The monthly operating reports that the Debtor has filed show widely varying income and expenses, incorrect calculations, and inconsistent and unreconciled bank account balances from month to month.  And these reports do not explain the source of the variations, which seem unusual in the context of a six-family residential property.

For example, the Debtor reports income ranging from $17,626 in November 2010 to $3,517 in November 2009.  He reports expenses ranging from $18,496 in November 2009 to $1,068 in October 2010.  And the Debtor reports operating results ranging from a cash profit of $6,259 in November 2010 to a loss of $13,979 in November 2009.  That is, even assuming that the Debtor's monthly operating reports are complete and reliable, they paint a picture of inconsistent and unreliable financial performance, and only modest income at best.

On March 5, 2010, the Court entered an Order retroactive to December 28, 2009, authorizing the retention of Steinberg, Fineo, Berger & Fischoff, P.C. ("Steinberg Fineo") as the Debtor's counsel.  Counsel appeared on behalf of the Debtor in connection with several hearings and filings until August 24, 2010, when the Court entered an Order granting the firm's motion to withdraw based upon, among other grounds, the firm's statement that the Debtor would not

provide information necessary to prepare a disclosure statement.

*The Property*

The Debtor purchased the Property on September 28, 2005, for $415,000.  To finance the purchase, the Debtor borrowed $300,000 from Mr. Fachlaev on September 29, 2005, and an additional $100,000 from Mr. Fachlaev on October 3, 2005.  The record does not indicate the terms of the first loan.  The second loan has a term of 30 days, with interest at ten percent per month.  The Debtor repaid $15,000 on the first loan before defaulting in 2008.  That same year, Mr. Fachlaev brought an action against the Debtor before a Rabbinical tribunal, or beth din.  The tribunal found in favor of Mr. Fachlaev, awarding him $514,350, consisting of $385,000 in unpaid principal, plus interest and legal fees.  In reaching its decision, the tribunal noted that a property located at 609 Sutter Avenue in Brooklyn was used to secure Mr. Fachlaev's loan, and that title to that property was later transferred out of the Debtor's name.

Before the Debtor purchased the Property, HPD petitioned for the appointment of an administrator of the Property pursuant to Article 7-A of New York State's Real Property Actions and Proceedings Law, and Peter Nakos was appointed as administrator on May 3, 2005.  After the Debtor acquired the Property, he sought to have Mr. Nakos removed.  HPD brought a second petition on September 18, 2007, Mr. Nakos was removed as administrator of the Property, and the Debtor was ordered to assume responsibility for the payment of all debts incurred by the administrator.  On November 21, 2008, the Housing Part of the Civil Court of the City of New York (the "Housing Court") awarded judgment to Mr. Nakos against the Debtor in the amount of $12,190 for legal fees incurred by Mr. Nakos in connection with the defense of motions brought by the Debtor.

*The Claims*

On June 2, 2010, this Court entered an amended Order fixing July 18, 2010, as the last date to file proofs of claim.  Claims were filed by Mr. Fachlaev, who asserts an unsecured claim of approximately $385,000; Mr. Nakos, who asserts a secured claim of $12,355 arising from the Housing Court judgment; Capital One Bank, successor by merger to GreenPoint Mortgage, which asserts a secured claim of $315,281 relating to the 609 Sutter Avenue property; HPD, which asserts a secured claim of $517,896 relating to the Property; the New York City Department of Finance, which asserts a priority claim of $4,439 and a secured claim of $590,314; the New York City Water Board, which asserts a secured claim of $7,481; the Internal Revenue Service, which asserts a priority claim of $10,392 and an unsecured claim of $1,943; and several other unsecured claimants.

On December 2, 2009, the Debtor, *pro se*, filed an objection to Mr. Fachlaev's claim, and later withdrew the objection without prejudice at a hearing on March 4, 2010.  On July 2, 2010, the Debtor, represented by counsel, filed a motion to expunge Mr. Fachlaev's claim, on grounds that it lacks the necessary documentary support.  In the alternative, the Debtor sought to reduce the claim by $100,000 on grounds that the interest rate on the second loan – ten percent per month – violates New York State's usury laws.  On July 26, 2010, Mr. Fachlaev filed opposition to the Debtor's motion, arguing that the documentation supplied is sufficient, that the Debtor does not deny his indebtedness, and that New York's usury laws do not apply because the loan was made pursuant to Jewish religious law.  That motion remains on the Court's calendar pending the disposition of this matter.

The Debtor, *pro se*, also filed an objection to Mr. Nakos's claim, and later withdrew that

4

objection without prejudice at the March 4, 2010 hearing.  On November 29, 2010, the Debtor, *pro se*, filed a second motion to vacate Mr. Nakos's claim, and on December 13, 2010, Mr. Nakos filed opposition to that motion.  That motion remains on the Court's calendar pending the disposition of this matter.

<u>The Debtor's Other Requests for Relief</u>

In addition to the motions described above, in the two years since this case began, the Debtor has filed at least seventeen letters to the Court complaining about the actions of Mr. Fachlaev and others.  In sum, he has sought, by applications for orders to show cause and motions, the disqualification of two attorneys, injunctive and other relief for violations of the automatic stay, a temporary restraining order and vacatur of a default judgment entered by the Housing Court, and the amendment of Mr. Fachlaev's claim.  In response to certain of these applications, Mr. Fachlaev consented to the entry of an order directing compliance with the automatic stay.  Other requests for relief were withdrawn after hearings, and still others were denied.  Most recently, the Debtor, by application for an order to show cause, seeks an award of sanctions against Mr. Fachlaev, the Rabbinical tribunal, and others for violations of the automatic stay.  That application remains on the Court's calendar pending the disposition of this matter.

<u>The Chapter 7 Bankruptcy Case of Rami Ribi Babayoff</u>

On August 14, 2008, Rami Babayoff, the Debtor's father, *pro se*, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  In the nearly two and a half years that his bankruptcy case has been pending, Rami Babayoff has filed many letters and requests for relief that are similar to those filed by the Debtor, and the docket in that case shows over 100 entries.  On May

22, 2009, the Chapter 7 Trustee filed a motion for a Bankruptcy Rule 2004 examination of the

Debtor, on grounds that there were "business dealings between both debtors and that the money

used by the Debtor to acquire property may have come from Rami Babayoff and not the Debtor."

Rule 2004 Mot. at 1.  That motion was granted on March 4, 2010.

Rami Babayoff received a discharge on May 26, 2010, but his case remains open due to

an ongoing contested matter involving alleged violations of the automatic stay against the same

parties named by the Debtor in similar applications.

_The Debtor's Proposed Chapter 11 Plans_

The Debtor has filed two proposed Chapter 11 plans of reorganization, one in June 2009

and another in September 2010.  As described below, neither of these plans complies with the

requirements of the Bankruptcy Code, neither contains the information required to permit a

creditor or other party in interest to understand how the Debtor plans to reorganize its affairs,

and neither has led to substantial progress toward confirmation.

The Petition identifies the nature of the Debtor's business as "Single Asset Real Estate as

defined in 11 U.S.C. § 101(51B)" and also indicates that the "Debtor is a small business debtor as

defined in 11 U.S.C. § 101(51D)."  Pet. at 1.  Based on his designation of this case as a small

business case, the Debtor's plan of reorganization was due on August 3, 2009.  On June 12, 2009,

the Debtor filed a document denominated as a Chapter 11 plan of reorganization, which is in

substance a summary of the Debtor's disputes with creditors and proposed ways to resolve them.

The Debtor did not amend this plan to bring it into compliance with Bankruptcy Code Section

1123, file a disclosure statement as required by Bankruptcy Code Section 1125 and Bankruptcy

Rule 3016(b), or otherwise take steps to confirm the plan.

6

At a status conference on July 6, 2010, when the Debtor was represented by counsel, he was directed, on consent, to file a plan and disclosure statement by July 16, 2010.  In its July 15, 2010 motion to withdraw as counsel to the Debtor, the Debtor's counsel requested an extension of the July 16, 2010 deadline.  On August 20, 2010, the Court issued an Order relieving Steinberg Fineo as the Debtor's counsel, and denying the request for an extension of the time to file a plan.

On September 8, 2010, the Debtor, *pro se*, filed an unsigned and incomplete plan (the "Plan") and a disclosure statement (the "Disclosure Statement").  Although some information is provided in the Disclosure Statement sections titled "Events Leading to Chapter 11 Filing" and "Significant Events During the Bankruptcy Case," other information, including the source of payments to implement the Plan, is not provided.  Disclosure Statement at 4-5, 10.

Article II of the Plan indicates that holders of allowed unsecured claims will receive a total of $100,000, *pro rata*, with $95,000 to "be paid from the proceeds realized from the repayment of a promissory note . . . which is due on April, 2011" (the "Note").[2]  Plan at 6. Article IV of the Plan, captioned "Means For Execution of the Plan," states that it will be funded from the proceeds of the Note and from rents received by the Debtor in the ordinary course of business.  Plan at 6.  Some forty pages of documents are attached to the Plan, including thirty pages of bank statements and receipts from the Debtor's business operations.  Also attached to the Plan is an appraisal dated May 10, 2010, stating the appraiser's opinion that the value of the

---

[2]  The Note has certain ambiguities.  It recites that Dr. Parvis Rafaelmehr, as payor, is obligated to the Debtor, as payee.  It is secured by a Purchase Money Mortgage and Security Agreement between the Debtor and Dr. Rafaelmehr.  The Mortgage lists the Debtor as mortgagor and Dr. Rafaelmehr as mortgagee on the first page, but lists Dr. Rafaelmehr as mortgagor on the unsigned signature page, and recites that it was given by the mortgagor to secure payment of the Note.

Property is $605,000.  Unsigned copies of the Note and a Purchase Money Mortgage and Security Agreement on the 609 Sutter Avenue property are also attached, and the Note shows that it is secured by the mortgage.

The Plan makes reference to the amounts and classes of some claims, but not others.  It proposes to pay all administrative and priority claims within ten days after the Plan's effective date.  The Plan also proposes to impair HPD's claim, paying the principal sum of $500,000 plus interest, in 84 monthly installments of $2,083, with a final balloon payment on October 1, 2017. The Plan does not make reference to the secured claim of Mr. Nakos or indicate how his claim will be treated.

Exhibit E to the Disclosure Statement sets forth a "Liquidation Analysis."  The Debtor lists assets of approximately $1,214,545, including lawsuits and other claims against third parties to which the Debtor assigns a value of $600,000.  The Debtor also lists $50,000 in exemptions and $385,900 in unsecured claims.  The plan does not describe how these amounts are calculated, and includes the amount of Mr. Fachlaev's unsecured claim but not those of other unsecured creditors.

The Debtor does not indicate the liquidation value of his assets in the Plan.  And while the Plan indicates that unsecured creditors will receive or retain a distribution of 33 percent of their claims, it does not specify the percentage distribution that the unsecured creditors would receive or retain in a liquidation scenario.  As a result, the Plan does not provide creditors with some of the most fundamental information that they require in order to evaluate whether it merits their support.  The Debtor has not requested a date for a confirmation hearing, and none has been set. Although the Plan was filed several months ago, it remains incomplete.

On October 15, 2010, Mr. Nakos filed an objection to the Plan, arguing that it cannot be confirmed because it did not account for or pay his secured claim of $12,355.

*Prior Motions To Convert or Dismiss*

On November 24, 2009, Mr. Fachlaev filed a motion to convert or dismiss the Debtor's case. On December 7, 2009, the United States Trustee filed a motion seeking the same relief (the "UST Mot. to Convert or Dismiss"). On February 26, 2010, the Chapter 7 Trustee in Rami Babayoff's case filed a statement in support of the motions to convert or dismiss (the "Chapter 7 Tr. Resp. in Supp."), and asked this Court to convert this case. And on March 3, 2010, the Debtor, by counsel, filed opposition to these motions.

In her December 2009 motion, the United States Trustee argued that conversion or dismissal was appropriate under Bankruptcy Code Section 1112(b) because the Debtor had not filed certain monthly operating reports, paid quarterly fees, or filed a confirmable plan or disclosure statement in a case that was then ten months old. She also noted that the Debtor had not resolved the disputed claim of Mr. Fachlaev, and that the size of Mr. Fachlaev's claim made it unlikely that the Debtor would be able to confirm a plan over his objection. She further argued that the Debtor's delay in prosecuting the case was prejudicial to creditors. And she urged that the case be converted rather than dismissed, on grounds that conversion would be in the best interest of creditors because a Chapter 7 trustee could determine the accuracy of the Debtor's valuation of the Property, whether HPD's lien on the Property could be reduced, and whether the Property could be sold for the benefit of unsecured creditors.

The Chapter 7 Trustee in Rami Babayoff's case argued that the Debtor has used this case and his prior Chapter 7 case to "abuse[] the judicial system to his benefit to the prejudice of

9

creditors." Ch. 7 Tr. Resp. in Supp. ¶ 4. The Chapter 7 Trustee noted that in his prior filing, the Debtor commenced the case *pro se*, then retained counsel, and later sought the voluntary dismissal of the case. He observed that the Debtor appears to be following the same pattern here. The Chapter 7 Trustee also stated that he had been frustrated in his attempts to identify the assets of Rami Babayoff's estate because the Debtor has not complied with the Court's Order authorizing a Bankruptcy Rule 2004 examination. And the Chapter 7 Trustee argued that the Debtor had made little progress toward confirmation of a plan and was not likely to be able to reorganize. The Chapter 7 Trustee supported conversion rather than dismissal, on grounds that a trustee would be better able to marshal the assets, administer the claims, and investigate whether the Debtor had any additional property that could be liquidated for the benefit of his creditors.

The Debtor opposed the motions to convert or dismiss in his Omnibus Opposition filed on March 3, 2010. The Debtor argued that the relief requested was premature because he had recently retained counsel and with counsel's assistance, he could address the issues and propose a feasible plan. For example, the Debtor stated that his counsel would examine the accuracy of the claims filed by HPD, Mr. Nakos, and Mr. Fachlaev, in order to determine whether these are calculated properly. The Debtor asserted that his time to file a plan had not expired because this case is a single asset real estate case, not a small business case, despite his designation of the case as such in the Petition.

The Debtor also provided evidence of payment of the outstanding quarterly fees to the United States Trustee and noted that on March 2, 2010, he filed monthly operating reports for November 2009, December 2009, and January 2010. And the Debtor indicated that he would cooperate with the Chapter 7 Trustee in the Court-ordered Rule 2004 examination.

At the hearing on the United States Trustee's motion on April 26, 2010, the Debtor, Mr. Fachlaev, and the United States Trustee, by counsel and on consent, agreed to the entry of a conditional order requiring the Debtor to cure several defaults, to produce certain documents, to file monthly operating reports, and to pay quarterly fees to the United States Trustee, and establishing a procedure for the conversion of the case to one under Chapter 7 if the Debtor did not comply.  On May 4, 2010, the Court entered a Conditional Consent Order Converting Case (the "Conditional Order") providing for the conversion of this case to one under Chapter 7 if the Debtor did not comply with these terms.  Two days later, the Debtor, *pro se* but still represented by counsel, filed a letter with the Court attempting to withdraw his consent to the entry of the Conditional Order.

On May 10, 2010, the United States Trustee filed an affirmation of non-compliance with the Conditional Order.  She stated that the Debtor had not filed monthly operating reports with the Court for the periods February 2009 to September 2009, and February 2010 to March 2010, and that the Debtor had not submitted certain required documents to Mr. Fachlaev.  On June 2, 2010, the Court entered an Order to Show Cause why the case should not be converted to one under Chapter 7, in accordance with the Conditional Order's terms.  On June 23, 2010, the Debtor filed opposition to the Order to Show Cause, stating that he was now substantially in compliance with the Conditional Order's terms.  At a hearing on July 6, 2010, with the consent of the United States Trustee, the Court marked the Order to Show Cause off the calendar.  And at a hearing on August 17, 2010, after the Debtor complied with certain Court directives, the Court marked the United States Trustee's motion off the calendar.

*The Present Motion To Convert or Dismiss*

11

In his Motion to Convert or Dismiss, Mr. Fachlaev seeks relief under Bankruptcy Code Section 1112(b). Mr. Fachlaev contends that inasmuch as this case was filed as a small business case, a Chapter 11 plan and disclosure statement were due by August 3, 2009, and none was filed by that date. And he argues that inasmuch as the case was commenced in February 2009, the Debtor has had ample time to propose a feasible plan and disclosure statement and pursue confirmation, but has not done so.

In addition, Mr. Fachlaev argues that the Debtor has no reasonable prospect of reorganizing, cannot effectuate a plan, and that all of this has caused unreasonable delay that is prejudicial to creditors. Mr. Fachlaev contends that the Debtor will not be able to reorganize because the monthly operating reports show that the Debtor is not profitable. He also states that there is no reasonable prospect of reorganization in view of the history of this case, including the Debtor's failure to meet the requirements of the Bankruptcy Code or this Court's orders, and the Debtor's prior Chapter 7 bankruptcy case.

Further, Mr. Fachlaev states that there is evidence of the Debtor's bad faith, because the Debtor is attempting to use Chapter 11 to resolve a two-party dispute, and that the only purpose of this case is to obstruct him in his efforts to collect funds owed by the Debtor. And Mr. Fachlaev notes that the estate is diminishing in value, as the Debtor's real property is losing value and the HPD lien continues to increase.

On November 16, 2010, Mr. Fachlaev filed an additional affirmation in support of his Motion to Convert or Dismiss. Mr. Fachlaev argues that the Debtor's conduct shows that he is unable and unwilling to effectuate a plan and that this case was filed and conducted in bad faith, resulting in substantial delay and prejudice to creditors. Mr. Fachlaev argues that throughout this

12

case, the Debtor has not met his administrative obligations.  For example, he notes that the Debtor

has not filed timely monthly operating reports and appears only to file them in response to

pending motions, and that the Debtor is behind on his payment of quarterly fees to the United

States Trustee.  Mr. Fachlaev states that while the Debtor filed a plan on June 12, 2009, he did not

file a disclosure statement in support of that plan or take meaningful steps towards confirmation.

Mr. Fachlaev further argues that the Debtor has not resolved the disputes concerning his claim

and seems unwilling to do so, and observes that there are no reasonable prospects of confirming a

plan over his objection.  And Mr. Fachlaev argues that each of these factors is sufficient, indeed

mandatory, grounds for conversion or dismissal under Bankruptcy Code Section 1112(b).

On December 3, 2010, the Debtor, *pro se*, filed a letter addressing Mr. Fachlaev's claimed

violations of the automatic stay and the Motion to Convert or Dismiss.  The Debtor states that Mr.

Fachlaev is using the Motion to Convert or Dismiss as an "illegal tool" and "a negotiating or

threatening tactic" against him and his father Rami Babayoff, and that he feels "under duress."  At

the hearing on this motion, the Debtor also argued that he should be permitted "a few more

months" to formulate an objection to the claim of HPD and to propose a plan.  He also argued that

the estate and its creditors would benefit from the proceeds of the Note, which is due in April

2011.

On January 6, 2011, this Court heard the Motion to Convert or Dismiss at which the

Debtor, *pro se*, Mr. Fachlaev, and the Office of the United States Trustee, by counsel, appeared

and were heard, and the Court reserved decision.[3]

---

[3] On January 6, 2011, after the close of the hearing, the Debtor, *pro se*, submitted an
application for an Order to Show Cause why an order should not be entered prohibiting Mr.
Fachlaev and any parties acting in concert with him from requesting that this case be converted

**Discussion**

*Conversion or Dismissal Under Bankruptcy Code Section 1112(b)*

Under Bankruptcy Code Section 1112(b), a court must convert or dismiss a Chapter 11

case if any of the following grounds is present:

(A)     substantial or continuing loss to or diminution of the estate and the
        absence of a reasonable likelihood of rehabilitation;

(B)     gross mismanagement of the estate;

(C)     failure to maintain appropriate insurance that poses a risk to the estate or
        to the public;

(D)     unauthorized use of cash collateral substantially harmful to 1 or more
        creditors;

(E)     failure to comply with an order of the court;

(F)     unexcused failure to satisfy timely any filing or reporting requirement
        established by this title or by any rule applicable to a case under this
        chapter;

(G)     failure to attend the meeting of creditors convened under section 341(a) or
        an examination ordered under rule 2004 of the Federal Rules of
        Bankruptcy Procedure without good cause shown by the debtor;

(H)     failure timely to provide information or attend meetings reasonably
        requested by the United States trustee (or the bankruptcy administrator, if
        any);

(I)     failure timely to pay taxes owed after the date of the order for relief or to
        file tax returns due after the date of the order for relief;

(J)     failure to file a disclosure statement, or to file or confirm a plan, within the
        time fixed by this title or by order of the court;

(K)     failure to pay any fees or charges required under chapter 123 of title 28;

(L)     revocation of an order of confirmation under section 1144;

(M)     inability to effectuate substantial consummation of a confirmed plan;

(N)     material default by the debtor with respect to a confirmed plan;

---

or dismissed.  On January 11, 2011, the Court entered an Order denying the Debtor's
application.

And on February 15, 2011, the City of New York filed a statement in support of
dismissal or conversion of the Debtor's bankruptcy case.  The City of New York notes, among
other grounds, that the Debtor cannot confirm a plan because it and Mr. Fachlaev do not consent
to their treatment, and the Plan was not timely filed.  The City also notes that there are grounds
to dismiss this case inasmuch as the Debtor has not paid water charges or property taxes in the
two years that this case has been pending.  *See* 11 U.S.C. § 1112(b)(4)(I).

> (O)    termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>
> (P)    failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

These grounds are "illustrative, not exhaustive." *In re AdBrite Corp.*, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (citing *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1311 (2d Cir. 1997)).  Accordingly, courts have also determined that conversion or dismissal of a Chapter 11 case is warranted for other reasons, including the debtor's inability to effectuate a plan and a debtor's unwarranted delay of the case through unnecessary motion practice.  *See In re DCNC North Carolina I, LLC*, 407 B.R. 651, 665 (Bankr. E.D. Pa. 2009) (concluding that "the inability to effectuate a plan, by itself, provides cause for dismissal or conversion of a chapter 11 case"); *In re Tornheim*, 181 B.R. 161, 171 (Bankr. S.D.N.Y. 1995) (finding that the debtor's motion practice was a "tactic to circumvent rather than serve the goals of the bankruptcy laws" and a factor in finding cause to dismiss the case).

If cause is established under Section 1112(b)(1), conversion or dismissal is mandatory unless the court determines that unusual circumstances exist so that these remedies are not in the best interests of creditors and the estate.  The directive of Section 1112(b) may be avoided only if the debtor or a party in interest objects and establishes that it is reasonably likely that a plan will be confirmed within the time frames set forth in the Bankruptcy Code or within a reasonable period of time, that the grounds for converting or dismissing "include an act or omission of the debtor" other than "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," and that a "reasonable justification [exists] for the act or omission" demonstrating cause to dismiss and the act or omission "will be cured within a

reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2), (4).

In assessing a motion made under Section 1112(b), the movant bears the burden of establishing "'cause by a preponderance of the evidence . . . .'" *Taub v. Taub (In re Taub)*, 427 B.R. 208, 231 (Bankr. E.D.N.Y. 2010) (quoting *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 170 (Bankr. S.D.N.Y. 2004)), *aff'd sub nom. Taub v. Adams*, No. 10-02600, 2010 U.S. Dist. LEXIS 104805 (E.D.N.Y. Aug. 30, 2010). And a bankruptcy court has "wide discretion" to determine if cause exists, and if cause is present, to decide whether to convert the case to one under Chapter 7 or to dismiss. *In re BH S&B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

*Whether Cause Arises from the Debtor's Inability To Effectuate a Plan*

Courts recognize that cause under Section 1112(b) may be established where the record shows that the debtor cannot effectuate a plan. A debtor's ability to effectuate a plan may well turn on practical considerations, including whether confirmation can be achieved. A debtor is unable to effectuate a plan where it "lacks the ability to formulate a plan or to carry one out." *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989). For example, one court found that cause under Section 1112(b) was present where a single creditor held seventy-eight percent of the unsecured debt and objected to the plan because his claim was impaired, so that confirmation of a plan was impossible. *In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 453 (Bankr. N.D. Ill. 2009). *See In re B & B West 164th Street Corp.*, 147 B.R. 832, 842 (Bankr. E.D.N.Y. 1992) (cause under Section 1112(b) present where plan confirmation impossible over objection of creditor who controlled over one-third of a class).

Here, Mr. Fachlaev is the Debtor's largest unsecured creditor. He holds some ninety-

nine percent of the amount of unsecured claims, his claim is impaired under the Plan, and he has

stated his intention not to vote for it.  Without his support, the Plan cannot be confirmed.  In

addition, Mr. Nakos, a secured creditor, filed his objection to the Plan based upon its failure to

account for or pay his claim.  These objections present an insurmountable obstacle to

confirmation.  *See In re Local Union 722*, 414 B.R. at 453.

More generally, the long history of this case shows that the Debtor has been unable to

formulate a plan of reorganization, or to make meaningful progress toward confirmation.  The

Debtor's first plan, filed in 2009, supports this conclusion in several ways.  This document

summarizes the Debtor's disputes with creditors and proposes ways to resolve those disputes.

But this plan, on its face, does not satisfy the requirements of the Bankruptcy Code.  For

example, it does not designate classes of claims and classes of interests, or specify any class of

claims or interests that is not impaired under the plan, or specify the treatment of any impaired

class of claim or interest under the plan, or indicate how each class of claims or interests is to be

treated under the plan, or provide "adequate means for the plan's implementation," as mandated

by Bankruptcy Code Section 1123(a).  And the Debtor did not file a disclosure statement, as

required by the Bankruptcy Code and Rules to aid creditors in evaluating the plan, or take

meaningful steps to move toward a hearing on confirmation.

The Plan and Disclosure Statement that the Debtor filed in 2010 similarly support the

conclusion that the Debtor is unable to effectuate a plan.  Each document is an incomplete draft,

and neither contains the kind of information required by Bankruptcy Code Sections 1123 and

1125 and Bankruptcy Rule 3016.  For example, although the Plan identifies classes of claims, it

does not list all holders of secured claims.  Similarly, although the Plan contains a section

17

entitled "Means for Execution of the Plan" in which the Debtor provides information about the nature and source of funding for the Plan, the amount of funding he proposes is insufficient to pay his secured creditors in full, and insufficient to pay his unsecured creditors the percentage of their claims that he indicates.

And the Disclosure Statement does not contain a background description of the Debtor's business, or indicate how priority tax claims under Bankruptcy Code Section 507(a)(8) will be treated.  It does not list Mr. Nakos' secured claim, or its proposed treatment.  In the section where the Plan's proposed treatment of unsecured claims is to be identified, the Disclosure Statement lists Mr. Fachlaev, but does not indicate whether his claim is impaired or unimpaired under the Plan, or how that claim will be treated.  The section where the Debtor is required to identify the "Means of Implementing the Plan," including the source of payments, is blank.  The Debtor has not listed the risk factors or tax consequences of the Plan.  The Disclosure Statement is blank where the plan proponent is required to list the classes who are impaired and unimpaired under the Plan, and so a creditor cannot tell if it is entitled to vote.  The liquidation analysis attached to the Disclosure Statement as Exhibit E is blank where the Debtor is required to provide dollar amounts for the liquidation value of the total assets, the amount of recoveries from secured creditors, and the amount of priority claims.  It also does not indicate the percentage of claims which unsecured creditors would receive or retain in a liquidation.

No plan or disclosure statement is perfect, and perfection is not the standard to apply when evaluating the provisions of a plan or the adequacy of the information contained in a disclosure statement.  But where there are this many omissions of required information, the plan cannot fulfill its purpose under the Bankruptcy Code, to serve as a roadmap for a debtor to

reorganize and exit from bankruptcy.  Similarly, where a disclosure statement omits a

meaningful liquidation analysis or description of the risk factors or tax consequences under the

plan, it does not serve the bankruptcy purpose of enabling a creditor to make an informed

decision about the plan.

Based on the entire record, these grounds constitute cause to convert or dismiss this case

under Section 1112(b).

<u>Whether Cause Arises Under Bankruptcy Code Section 1112(b)(4)(J)</u>

Section 1112(b)(4)(J) provides that a debtor's "failure to file a disclosure statement, or to

file or confirm a plan, within the time fixed by this title or by order of the court," is cause to

convert or dismiss a Chapter 11 case.  11 U.S.C. § 1112(b)(4)(J).

This Section reflects the fact that the filing of a disclosure statement and filing and

confirmation of a plan is central to the progress of a successful Chapter 11 case.  As one court

noted, "[d]isclosure is a fundamental component of the bankruptcy process." *In re Midwest*

*Props. of Shawano, LLC*, 2010 WL 5258977, at *6 (Bankr. D. Del. Dec. 20, 2010).  The

disclosure statement is necessary to provide creditors with sufficient information to enable them

to cast an informed vote on the plan.  *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir.

1994) ("Of prime importance in the reorganization process is the principle of disclosure.")  And

the plan is the framework for the debtor's reorganization and exit from bankruptcy.

But labeling a document "disclosure statement" does not ensure that it contains the

information required by Bankruptcy Code Section 1125.  The adequacy of the information set

forth in a disclosure statement is a subjective determination, and one that is committed to the

court's sound discretion.  *See Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation*

*Corp.)*, 383 B.R. 856, 865 (E.D.N.Y. 2008). And not every document denominated a "plan" meets the requirements of Bankruptcy Code Section 1123.

For example, relief under Section 1112(b)(4)(J) may be appropriate where the debtor's plan is incomplete in material respects, or no more than an outline. This is because the plan should provide the court, the creditors, and all parties in interest with a clear description of the reorganized debtor's structure and prospects. As one court observed, a "nebulous plan" is neither adequate nor feasible, and is cause to convert a case to one under Chapter 7. *In re Koerner*, 800 F.2d 1358, 1368 (5th Cir. 1986). As another court found, where the record supports the creditors' assertions that the plan contains "inaccuracies and vague areas," as well as "misstatements and deficiencies," conversion is warranted. *In re Winslow*, 123 B.R. 641, 643, 646 (D. Colo. 1991). And where a disclosure statement did not provide adequate information about the debtors' financial difficulties or their future cash requirements, among other deficiencies, the court concluded that dismissal was called for under Section 1112(b). *See Hall*, 887 F.2d at 1043.

Section 1112(b)(4)(J) also reflects the fact that a debtor must comply with the time requirements established by the Bankruptcy Code and any orders of the court. That is, "'a debtor cannot wallow in chapter 11.'" *In re BH S&B Holdings*, 439 B.R. at 351 (quoting *In re Tornheim*, 181 B.R. at 164). A debtor's failure to make meaningful and substantive progress toward the confirmation of a plan within the time periods fixed by the Bankruptcy Code and any court orders may lead to undue delay, and such delay is nearly always prejudicial to creditors. If a debtor does not make progress toward confirmation of a plan within these time periods, or within a reasonable period, then relief under Section 1112(b)(4)(J) should follow. *See In re*

20

*Van Eck*, 425 B.R. 54, 65 (Bankr. D. Conn. 2010) (cause to dismiss present after eighteen

months where debtor filed plan to be funded by speculative inheritance and funds generated from

entity yet to be formed); *In re Tornheim*, 181 B.R. at 165 (cause to convert or dismiss present

after sixteen months where the debtor's "failure to file a plan . . . shows both unreasonable,

prejudicial delay and an inability to effectuate a plan"); *In re Larmar Estates, Inc.*, 6 B.R. 933,

935 (Bankr. E.D.N.Y. 1980) (cause to convert or dismiss present after eight months where plan

had not been filed, where there was "absolutely no movement toward the confirmation of a

plan," and "[i]t [was] clear that the debtors [had] been unable to effectuate plans of

reorganization."); *In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 459 (S.D.N.Y. 1985) (cause

to dismiss present after six months where Chapter 11 debtor had neither filed plan nor shown an

ability to do so in the near future).

Here, some two years have passed in this case, and the Debtor has not demonstrated the

ability to file and confirm a complete and feasible plan.  The Debtor's Plan does not designate

classes of claims or interests, specify any class of claims or interests that is unimpaired under the

Plan, specify the treatment of any impaired class of claim or interest under the Plan, indicate how

each class of claims or interests is to be treated under the Plan, or provide "adequate means for

the Plan's implementation," as mandated by Bankruptcy Code Section 1123.

Similarly, the Debtor's Disclosure Statement falls well short of the standards set in the

Bankruptcy Code and Rules, and omits several key categories of information.  It does not list

Mr. Nakos' secured claim or its proposed treatment, or indicate whether Mr. Fachalev's claim is

impaired or unimpaired under the Plan or how that claim will be paid.  The source of payments

to fund the Plan is blank, and the Debtor does not identify the risk factors or any tax

consequences of the Plan.  The Disclosure Statement does not indicate which classes are

impaired under the Plan, so claimants cannot tell if they are entitled to vote.  The liquidation

analysis does not provide dollar amounts for the total liquidation value of the Debtor's assets, or

the amount of priority claims.  There is no indication of the percentage of claims which

unsecured creditors would receive or retain in a liquidation.  And the Debtor has not asked this

Court to consider the adequacy of the information contained in the Disclosure Statement, as

required by the Bankruptcy Code and Rules 3017 or 3017.1.  These omissions make it

impossible for a creditor to "make an informed judgment about the plan."  11 U.S.C. § 1125(a).

    Based on the entire record, these grounds constitute cause to convert or dismiss this case

under Section 1112(b).

### *Whether Cause Arises Under Section 1112(b)(4)(E)*

    Section 1112(b)(4)(E) provides that a debtor's "failure to comply with an order of the

court" is cause to convert or dismiss a Chapter 11 case.  11 U.S.C. § 1112(b)(4)(E).

    This Section gives effect to the notion that compliance with court orders is a fundamental

obligation of any party, and a debtor's failure to comply with a court order is a troubling matter

indeed.  As one court noted, "[b]ecause . . . violations [of a court's orders ] are disrespectful to

the Court, they are disrespectful to the judicial process."  *Babakitis v. Robino (In re Robino)*, 243

B.R. 472, 487 (Bankr. N.D. Ala. 1999).  And Section 1112(b)(4)(E) also reflects the fact that the

protections that a debtor gains under the Bankruptcy Code travel in tandem with many

obligations that the debtor must meet.  As the *Robino* court noted, "[i]n the bankruptcy context,

if a debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide

by the orders a court enters."  *Id.*

22

Notably, Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud. As another court observed, "[t]o reap the benefit of chapter 11, the debtor must pay the price of disclosure; he or she needs to provide financial and other relevant information to the creditors to inform them and the Court about the progress and status of the case." *In re Tornheim*, 181 B.R. at 164.

Here, in the two years that this case has been pending, the Debtor has failed on several occasions to comply with this Court's orders. For example, the Debtor did not comply with the Conditional Order, and instead filed a letter attempting to withdraw his consent. The Debtor also did not comply with this Court's July 6, 2010 Order directing him to file a plan and disclosure statement by July 16, 2010 and instead filed those items two months late.

The Debtor also has not complied with this Court's October 15, 2009 text Order directing him "to file all previously submitted operating reports by October 22, 2009, and to file future monthly operating reports at the same time they are served." Despite the entry of that Order, the Debtor did not file monthly operating reports for the period February 2009 to September 2009, and he filed many other monthly operating reports weeks or months late. And the Debtor did not file a monthly operating report for December 2010. Each of these missing or tardy filings is a violation of this Court's Order.

Based on the entire record, these grounds constitute cause to convert or dismiss this case under Section 1112(b).

*Whether Cause Arises Under Section 1112(b)(4)(F)*

Section 1112(b)(4)(F) provides that the "unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this

chapter" is cause to convert or dismiss a Chapter 11 case.  11 U.S.C. § 1112(b)(4)(F).  Since the inception of this bankruptcy case, the Debtor has failed repeatedly to comply in a timely manner, or at all, with some of the most fundamental filing and reporting requirements applicable to a Chapter 11 debtor.

Bankruptcy Code Section 308(b) provides that "[a] small business debtor shall file periodic financial and other reports containing information" concerning the debtor's profitability, cash receipts and disbursements, and other matters.  11 U.S.C. § 308(b).  Bankruptcy Rule 2015 requires a debtor in a Chapter 11 small business case to "file and transmit to the United States Trustee" the periodic financial report required by Bankruptcy Code Section 308 no later than the twenty-first day of the following month covered by the report.  Local Bankruptcy Rule 2015-1 requires a Chapter 11 debtor to file monthly operating reports no later than the twentieth day of the following month.  And the Notice of Status and Case Management Conference and Requirements for Filing Monthly Operating Reports, served by the Clerk of Court on February 12, 2009, alerted the Debtor that compliance with the requirement to file monthly operating reports may be considered at status and case management conferences in the case.

Monthly operating reports provide necessary information to the Court, creditors, and other parties in interest about the progress and prospects of a debtor's reorganization efforts. The requirement to file these reports on a timely basis, no later than twenty days following the reporting period, assures that current information is regularly and easily available to anyone with an interest in monitoring the progress of a case toward confirmation.  Late filings complicate this task, and missing filings may render it impossible.

As noted above, the Debtor did not file monthly operating reports for the period February

2009 to September 2009.  While the Debtor submitted the February 2009 through July 2009 reports to the United States Trustee, that does not amount to compliance with his obligation "to satisfy timely any filing or reporting requirement" established by the Bankruptcy Code and Rules.  11 U.S.C. § 1112(b)(4)(F).

And while the Debtor filed monthly operating reports for the period from November 2009 to January 2010, these were filed in a single batch, weeks or months late.  The Debtor filed monthly operating reports for the period February 2010 to November 2010 late.  And the Debtor has not filed the December 2010 monthly operating report, which was due by January 20, 2011.

Based on the entire record, these grounds constitute cause to convert or dismiss this case under Section 1112(b).

<u>*Whether Conversion or Dismissal Is the Appropriate Remedy*</u>

Once cause for relief under Section 1112(b) has been found, the court must decide whether conversion or dismissal is the appropriate path.  There is no "bright-line test to determine [whether] conversion or dismissal is in the best interests of creditors and the estate." *In re Westhampton Coachworks, Ltd.*, 2010 WL 5348422, at *6 (Bankr. E.D.N.Y. Dec. 21, 2010); *In re Tuscan Sun Ristorante, Inc.*, 2010 WL 4929444, at *3 (Bankr. E.D.N.Y. Nov. 30, 2010).  *See In re BH S&B Holdings*, 439 B.R. at 346.  And the considerations are the same whether the debtor is an individual or an entity.  *See In re Rubio*, 2011 WL 124458, at *4-*5 (Bankr. E.D.N.Y. Jan. 13, 2011).

In making this determination, a leading bankruptcy treatise suggests that the court may consider factors including:

> (1) whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal, (2)

whether there would be a loss of rights granted in the case if it were dismissed rather than converted, (3) whether the debtor would simply file a further case upon dismissal, (4) the ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors, (5) in assessing the interest of the estate, whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise, (6) whether any remaining issues would be better resolved outside the bankruptcy forum, (7) whether the estate consists of a "single asset," (8) whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests, (9) whether a plan has been confirmed and whether any property remains in the estate to be administered, and (10), whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

7 COLLIER ON BANKRUPTCY ¶ 1112.04[7] at 1112-41 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (citation omitted).  *See Coachworks*, 2010 WL 5348422, at *6 (citing treatise); *Tuscan Sun*, 2010 WL 4929444, at *3-*4 (same).

Conversion supports the Bankruptcy Code policy of "vigorous maximization of the value of the economic enterprise." *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr. E.D. Ca. 1992). Value for the estate and creditors may be enhanced through a trustee's avoiding powers if the trustee discovers assets to bring into the estate. *See In re Ameribuild Constr. Mgmt., Inc.*, 399 B.R. 129, 134 (Bankr. S.D.N.Y. 2009) (Chapter 7 trustee would be "independent fiduciary" who could examine claims and transactions and prosecute as appropriate).  Value also may be created where, by converting the case, an orderly liquidation of the debtor's assets will occur and a prompt conclusion to the bankruptcy process may be anticipated.  And where a majority of creditors favor one result over the other, "the consensus of a majority of . . . creditors" is another factor which may guide the court in determining what is in their best interests.  *Rollex Corp. v. Assoc. Materials, Inc. (In re Superior Siding & Window)*, 14 F.3d 240, 242 (4th Cir. 1994).

The possible benefits of conversion must be weighed against the incremental costs to the estate.  Where a trustee would impose an unaffordable burden, dismissal may well be in the

estate's best interests.  *Midwest Props.*, 2010 WL 5258977, at *6.  But where there is a prospect of the recovery of assets, conversion may be in the best interests of the estate and the creditors despite these costs.  *See BH S&B Holdings*, 439 B.R. at 351.

And a trustee's ability to examine the estate as an independent fiduciary and administer it in an orderly fashion protects creditors, just as "the benefits of bankruptcy protection" benefitted the debtor.  *Tuscan Sun*, 2010 WL 4929444, at *5.  Viewed another way, if "[t]he creditors . . . are better served by the centralized collection and disbursement provided by the bankruptcy process," then conversion, rather than dismissal, is in the best interests of creditors and serves as the preferred remedy.  *Coachworks*, 2010 WL 5348422, at *7.

Mr. Fachlaev argues that this case should be converted to one under Chapter 7, based upon the Debtor's inability to effectuate a plan and other grounds.  The United States Trustee concurs that conversion is a better remedy, and argued in her Motion to Convert or Dismiss that a Chapter 7 trustee "can determine whether the Debtor's valuation of his real property is accurate, whether the property can be sold for the benefit of unsecured creditors, and whether the New York City liens may be reduced."  UST Mot. to Convert or Dismiss at 7.  She also states that a Chapter 7 "trustee may . . . sell the property and negotiate agreements with secured creditors pursuant to section 506(c) of the Bankruptcy Code, which may provide a source of funds for unsecured creditors."  UST Mot. to Convert or Dismiss at 7-8.

Here, several considerations weigh in favor of the conversion of this case to one under Chapter 7, rather than dismissal.  If this case is converted, a Chapter 7 trustee will be appointed and will be able to pursue assets including the Note, which is due in April 2011, for the benefit of the estate.  A Chapter 7 trustee also may raise any preferential payments made by the Debtor

as defenses to claims under Bankruptcy Code Section 502(b).  *Liebert v. Nisselson (In re Levine)*, 2008 Bankr. LEXIS 2639, at *8 n.9 (Bankr. S.D.N.Y. Sept. 5, 2008).

A Chapter 7 trustee may also look into the circumstances of the secured claim filed by Capital One Bank against the 609 Sutter Avenue property, which is not listed as an estate asset. And a Chapter 7 trustee may address the issue of valuation of the Property, negotiate with secured creditors in an effort to reduce their claims, and consider the liquidation of estate assets for the benefit of creditors.

Based on the entire record, these factors weigh in favor of finding that conversion of this case is in the best interests of creditors and the estate under Section 1112(b).

### Conclusion

For the reasons stated herein, and based on the entire record, the Motion to Convert or Dismiss is granted to the extent that this case will be converted to a case under Chapter 7 of the Bankruptcy Code.  An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
       February 16, 2011

*s/ Elizabeth S. Stong*
HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE